The next case on our docket is 25-30228 in their matter of Maison Royale and Sutton v.  Adams. I don't want to mispronounce your name. Good morning, Your Honor. Leo Cangini on behalf of Rick Sutton. Thank you. May it please the Court. Your Honor, I intend to focus my argument primarily on the contra non-valentum doctrine. And the fact that the lower courts erred in failing to find that Mr. Adams did not satisfy his burden of proving that the contra non-valentum doctrine was applicable and that the state court stay did not prevent Mr. Adams from filing a collection lawsuit against Maison Royale. The contra non-valentum doctrine that's applicable in this case, Your Honor, requires that there was some condition in connection with the state court proceedings that prevented Mr. Adams from filing a collection lawsuit. Unless that state court proceeding involved the same cause of action that both the trustee, the F7 trustee in the bankruptcy case, and that my client, Rick Sutton, argued was prescribed, unless it's that same cause of action, then Mr. Adams was able to continue and pursue his cause of action in state court. So we really need to focus on that, the Fourth Circuit, the Louisiana Fourth Circuit order that imposed the stay and whether or not that prevented a collection action, Your Honors. I think it's important too that, you know, there has to be some limits to the stay at the Fourth Circuit. Of course, there's some limits. As a bankruptcy practitioner, I'm familiar daily with the automatic stay under 362 of the Bankruptcy Code, and that lays out precise actions and conduct that are stayed and that you cannot pursue, the most basic of which is a creditor cannot file a lawsuit against a debtor. But that doesn't prevent a debtor from filing lawsuits against a creditor. If it's not within the scope of that stay, the action is not prevented. In this case, Your Honors, the order is relatively simple, the Fourth Circuit order. It provides that there was a stay issued pending a decision from the Fourth Circuit in the following cases, and then it lists four lawsuits. Each lawsuit was filed in a different year. There was a 2014, 2015, 2016, and 2017 consolidated lawsuits that were stayed by the Fourth Circuit order, Your Honors. The three most recent lawsuits, I don't think there's any dispute that those involve completely different causes of action, did not involve a potential collection action by Mr. Adams against Maison Royale, so it could not have prevented him from filing that lawsuit. So it can't be used as an excuse for Mr. Adams having not filed a lawsuit, you know, seven or eight years later on his loan claims. The only lawsuit that's implicated is the 2014 lawsuit, Your Honor, which is a partnership dispute. It's really the crux of this matter, Judge. This case emanates out of a 50-50 partnership dispute between Mr. Sutton and Mr. Adams, and that 2014 lawsuit was the litigation that commenced a flurry of other lawsuits between the parties relating to whether or not Mr. Adams breached his partnership agreement and how the company should continue. Judge Fallon touched on the lawsuit in his opinion, Your Honors, and noted, and it's important that, so when that lawsuit was filed, early on there was an injunction imposed by the state court, the 2014 lawsuit, and the state court enjoined Mr. Adams from stopping or denying Mr. Sutton access to the books and records and denying Mr. Sutton access to the business in that 2014 lawsuit. Early on in the litigation, Mr. Adams violated that order, and he in fact conducted a fire sale of the assets that were remaining in the business. And that's what led to this $775,000 pot of money that is at dispute here. The state court found that because Mr. Adams violated the order and conducted this sale in violation of the preliminary injunction, that Mr. Adams was required to deposit the money back into the registry of the court, Your Honors. Now, so what was happening in this 2014 litigation is that the court was essentially maintaining the status quo, right? In fact, the vehicle that the state court used was a writ of sequestration bringing the $775,000 back into the state court. The injunction that was issued, was that still enforced while the case was on appeal? Was the injunction, well, the injunction actually, what happened while it was on appeal is Mr. Adams ended up prevailing and establishing that he was the 100% owner. Right. And before he could get his money back, the court says, no, stop. Or it goes to the Louisiana Supreme Court. And this is quite a procedural thicket. I guess what I'm trying to get in my mind is, you've got this injunction of Adams, you've got to let Sutton into the business, access to the books, et cetera, and so forth. Adams does what he does, has the fire sale, liquidates the company, and this money that he gets from it, the courts, I'm going to use the word courts, plural, because I can't recall if it's the trial court or the court of appeal, but they say, no, you've got to pay this into the registry of the court. And this is the forced loan as the bankruptcy court characterized it. So at that point, the court has ordered Adams to pay the money into the court. And then the Louisiana Court of Appeals stays. I guess what I'm getting at is, where's your off-ramp that supports your theory that Adams could have gone off and filed yet another piece of litigation to try to get this money that's held by the court per court order? Sure, Your Honor. And how does he do that without violating either the injunction or the court order, ordering it into the court, or the stay? Understood. Let me frame it a little bit, and I will answer your question directly. But recall that, so what Judge Crawford decided, the bankruptcy judge, is that he actually did decide that a portion of Mr. Adams' alleged loans were prescribed. There was about a $202,000. Right. And I'm really focused on the $775,000. I understand. And just so we're clear, though, I think there's no dispute that regardless of injunction and the stay, Mr. Adams could have filed a lawsuit to collect the $202,000. It's just a little counterintuitive to me to say you've got four pending state lawsuits. You've got one at the Court of Appeal. And you've got injunctions and stays and orders saying, pay this into the registry of the court. And your answer is, more litigation. And I get that you're saying that contra non volentem says you cannot do anything to collect your money. Therefore, the prescription is told. But how is he supposed to do something without getting hauled into one of these other pending court cases in contempt again? It's different litigation, of course, is our argument. I understand it's different litigation. But you're saying, let's go sue some more. And you're going to have courts dueling courts at some point trying to shut these parties down from doing things. I mean, I don't see how he's not prohibited from accessing his money. Well, two things, Judge. He's not prohibited from suing to collect a loan against Maison Royale, number one, number two. But with regard to his money, they do continue to litigate the issue of who gets the ultimate res, like the monies that are left. Yeah, no, it goes up to the Supreme Court that it goes, I've lost the trail of where it all is. But Adams eventually won, correct? Adams, well, no, not exactly, Judge. Adams won in the lower court. And that's part. So in this same lawsuit that we're referring to, the 2014 lawsuit, the court granted in 2019 an exception and essentially found that Mr. Adams was the 100% owner of the company. And that's where he files the motion to withdraw the money and he has the right to take his money out. Because again, these aren't loan proceeds. This is the residue from the company that's been dissolved and no longer exists. So the court says, Mr. Adams, you own 100% of the company. Now you can take your $775,000, not because it's loan proceeds, but because that's what's left over when you liquidated the company. You can do with it what you want. You may be violating fiduciary duties to other folks, but you have 100% control of that company. So you can take the $775,000. Now that decision is the decision, Your Honor, that was in 2019 when the court ruled in Mr. Adams' favor and said, take the money. But the Supreme Court vacated that decision in 2023. And what was happening... This is based on res judicata and I guess the Louisiana Supreme Court said no. Yeah. There was another case, Judge, where they actually, it was a peremptory exception. And that district court found that based on documents that Mr. Adams prepared, that he owned 100%. And then the second court said, okay, our sister court determined that there was no ownership in favor of Mr. Sutton. So we're going to apply res judicata. And the Supreme Court said, you can't do that. I mean, you can't, on an exceptional prescription, you can't resolve a fact-intensive partnership dispute like this. Unfortunately, it took Mr. Sutton almost 10 years to get to that point. And he was about to go back to state court and have his trial when Mr. Adams put Maison Royale into bankruptcy and removed all the litigation to the district court. And what did Mr. Adams do? He could file a collection lawsuit against Maison Royale. He did continue to pursue his exceptions. And at that point in 2019, he filed his motion to withdraw the funds. Interestingly, in that motion to withdraw the funds, Mr. Adams makes no mention of a loan. He doesn't say that the $775,000 was a loan. There's no talk about this ongoing loan balance, the additional $202,000 that he raised in the bankruptcy case. The loan only came of light after the bankruptcy case was filed. You're arguing that the funds were not a loan, but you're also arguing the three-year prescriptive period for money lent applies. Is that not inconsistent? Do I understand your argument correctly? Well, if the money's not a loan, Your Honor, see this all emanates out of a bankruptcy case, correct? Yeah, I'm hoping you'll get to the bankruptcy case because you've been talking about the state court litigation, which is fine, obviously pertinent, but the bankruptcy case is what we're here for. Well, if it's not a loan, Your Honor, then it's an equity contribution and he doesn't have a proof of claim in the bankruptcy case. So what happens is his claim is really, you're right, it all emanates out of two objections to his proof of claim. If it's established that the monies that Mr. Adams is owed are really equity contributions, then his proof of claim is disallowed. He's not a creditor. He has no claim in the bankruptcy estate and the bankruptcy would be a solvent bankruptcy. This was really a two-party dispute. That's a whole other issue that you all may hear from some other day, but this is not a valid, legitimate bankruptcy case. It's a two-party dispute. So when his claim gets disallowed, the only other creditor is Mr. Sutton. Mr. Sutton's claim is roughly $200,000. They'll get paid in full from the residuals of this $700,000 and the case will be closed. So I guess we don't need prescription if his claim is equity judged because his claim gets disallowed simply because it's not a creditor's claim. So did I answer your, Judge Wilson, did I answer your question about the, I know I went on a different trail. I mean, I think so. All right. Thank you, Your Honor. So I think you still have to get back to, and Your Honor, I apologize. This is my first time before the Fifth Circuit, somewhat nervous. Does the four minutes, is that from my 20 minutes? I would like to reserve. No, you've got, this is out of your initial time. You still reserve time. All right. Thank you. I apologize. So, so Your Honor, going back to the, the stay, and I'm happy to delve into the bankruptcy, but the reason I'm focused so much on contra non-valentum is because that's sort of the death knell for Mr. Adams' claim, right? That's the easy one. If he can't prove, satisfy his burden of proof that the stay stopped him from filing a collection action, his claim is clearly prescribed because it would go back to the loans in 2016 or at least 2017 when he made the deposit. The bankruptcy case was not filed until 2023. So there's a six-year window. He's at least three years late filing his, his lawsuit. If he can't establish that the Fourth Circuit stay made contra non-valentum applicable, Judge. So, and, and sort of tying back talking about the bankruptcy case and contra non-valentum, this is a non-statutory exception to prescription, Your Honor. And I, I think typically, as I appreciate it, the doctrine applies when, when persons are unable to, typically unable to appreciate their cause of action. I think most recently in the news, it's been discussed in the context of abuse victims, you know, relating to the archdiocese and not only Louisiana, but around the country. And so the point is that due to the, to the extreme trauma, they didn't know they had a cause of action. They, they were unable to file the cause of action. In this case, I think it's important that Mr. Adams never during the state court litigation that allegedly prevented him from the lawsuit referred to the $775,000 or the additional monies as loans. That's because these lawsuits, again, were a 50-50 partnership dispute. This had really very little, if anything, to do with his loans. This was litigation that, hey, Mr. Adams, you breached your agreement with me. You're not allowing me to participate in this business. And I'm entitled to damages because of that. The lot, the loans only were mentioned or came into play in 2023 when the, when the bankruptcy case was filed, Your Honors. And that's, that's because the bankrupt, that was the only way to try to portray this as a legitimate bankruptcy that could stop the state court litigation, Judge. So under those circumstances, I don't think this is the type of scenario where contra non-valentam should be applied. Judge, I can touch on, I have a minute left. There were several other defenses that we raised, including the fact that the loans were not established. We had an expert that presented testimony regarding the fact that these loans that Mr. Adams claims primarily arose out of consignments that he made to the company as part of the partnership deal. And so he would, so the loans were not cash loans. They were based on goods. And there was a dispute regarding what were the loans really worth, what was actually extended to the company. And there was never any evidence in the bankruptcy court regarding the value of these goods. Mr. Adams never provided the actual cost of the goods that he submitted to the company. And, and we submit that that's more of a factual issue, but that the bankruptcy court committed clear error in failing to agree that the loans were not established. Secondly, Judge, there's also that we kind of hit on the, the characterization of this loan. Judge Fallon and Judge Crawford both disagreed with sort of the legal concept, but I'm not, we weren't asking for recharacterization. Our argument was that these loans from the first instance had to be capital contributions based on the extreme lack of formalities and the other issues that we outlined in our brief, Your Honor. I'll reserve my time for rebuttal. Thank you, Your Honor. Good morning, Your Honors. May it please the court. My name is Kim Boyle and I'm here on behalf of the appellee, Jack Adams. Adams respectfully requests that this honorable court affirm not only the bankruptcy court's decision, but the decision on appeal by the district court, which allowed Adams' proof of claim number four to proceed in the aggregate amount of $815,000. Your Honors, there are only two issues before this court on appeal. One is the classification of the $775,000, which was placed in the state court registry as a loan. As it relates to that classification, the bankruptcy court made very specific factual findings that one, Mr. Adams made a number of loans to the business of Maison Royale. He also noted that even the plaintiff's own expert, Mr. Sutton's own expert, Mr. Tizard, said that there were at least loans made by Mr. $775,000. Those specific factual findings have not been properly asserted, nor is there any evidence to show that those factual findings were clearly erroneous for purposes of this court even reviewing that issue. However, the second issue on appeal is the issue that opposing counsel just talked about is also the timing of Adams' claim for the $775,000 in the registry of the court. Appellant has failed to demonstrate that both lower courts' factual findings were clearly erroneous or that the bankruptcy court and the district court's conclusions of law were made in error. In fact, appellant's original brief fails to even address, cite, or refer to binding precedent by this court in 2011, Lothian Oil, that governs the appellant's claim that the court overruled the bankruptcy court as well as the district court. So for all the reasons outlined by Judge Fallon on the district court level on appeal, as well as Judge Crawford from a bankruptcy court, Jack Adams requests that the court affirm those findings. Now, in starting with the $775,000 that was placed in the registry of the court, first of all, Judge Fallon's decision makes abundantly clear that appellant never challenged Judge Crawford's characterization of what appellant was attempting to do as a re-characterization under the bankruptcy court and under Lothian Oil. Judge Fallon makes that specific decision. In his order of reasons, first, Judge Fallon states that the appellant, Rick Sutton, actually bears the burden of proving that the loan made and put into the registry of the court should be re-characterized from debt to equity. And Judge Fallon makes the specific determination that Sutton failed to satisfy his burden of proof. As stated, your honors, there is absolutely no discussion, no attempt to distinguish, no reference to binding precedent from this court. In fact, what appellant attempts to do is ask this court not to look at its own precedent in the Lothian Oil case, but to look at something from the Sixth Circuit. That is completely inappropriate under Fifth Circuit jurisprudence, but it's also completely inconsistent with Section 502 of the bankruptcy code, as well as under US Supreme Court law. So back up a little bit. Yes, your honor. More basic question. What is the import of the district court's conclusion that Mr. Sutton didn't challenge the framing by the bankruptcy court? In other words, what else could it be? I mean, I know, in other words, the bankruptcy court called it a re-characterization. Sutton doesn't challenge it in the district court. What's the upshot of that? Well, your honor, I was just bluntly responding to opposing counsel's statement related to that he wasn't really talking about re-characterization, etc. I'm saying that it was an established fact that Mr. Sutton and the bankruptcy court never, ever said that this was not a re-characterization issue. But what does that matter? Is that just cabining our analysis? Yes, your honor. Is it equity, or is there something else I'm missing? Yes, your honor. It's cabining the analysis to the Lothian Oil case, because in Lothian Oil, this court specifically said, if you're talking about trying to disallow a claim related to re-characterization from debt to equity, you must look at applicable state law. So I am trying to cabinet consistent with this court's actual precedent. Does the result come out differently if we went with the Sixth Circuit and the other circuits that have those factor tests? I would think that the results could come out differently if you look at the specific factors related to formal promissory note and things of that nature, your honor. But the reason I ask that question is, this is a payment into the court registry. Yes, your honor. The court, the state district court, ordered these funds to be paid. Yes. You're not going to have a promissory note or a loan document or a deed of trust or anything like that when you do something like that, right? No, you would not have that at all, your honor. I don't know how you apply those factors in a situation like this. And to get to the point, as it relates to the fact that this was a court-ordered requirement that the funds be paid into the registry of the court, that actually also undercuts appellant's assertion that Mr. Adams could have gone and filed some type of collection action against Maison Royale. Let's talk about that. Yes, your honor. The nature of this is the bankruptcy court called it a forced loan. In other words, Adams didn't have any choice but to put the money in for the benefit of the company. Pursuant to the court order. All right, so, but you heard counsel opposite, and I asked about the state court litigation, that the parties here could have made this more complicated, but they would have had to have tried really hard. But so was Adams bound by the stay, the injunction, the order to deposit the funds from pursuing recovery of those funds via separate collection action. Yes, your honor. How so? Ms. Adams was bound in several respects. First of all, there had already been a court order in January of 2020, where the district court division in a civil district court specifically said that the funds were Jack Adams money. So he already had an actual order in hand saying that this was his money. Two weeks later, after that order came out is when the fourth circuit court of appeal specifically stayed all of the litigation. So if they're staying all of the litigation, one pieces of the litigation involved a specific determination by the district court, one, where it vacated the injunction that opposing counsel referred to two in a separate order on January, I believe, 11th, 2020, the district court specifically said in response to Jack Adams motion for release of the funds, it said, this is Jack Adams money. Then two weeks later, the intermediate appellate court, the fourth circuit court of appeal says we're staying everything. It's too much going on down here. We are staying everything. So how does... Is there language in the stay order that would apply to prospective or new litigation, non-pending litigation? No, your honor. There is not language in the stay order that would apply to non-pending litigation. So he could have gone and filed something else? No, your honor. I believe that he could not have gone and filed something else because one, I believe that an issue of claim preclusion or issue preclusion certainly would have come up if he had attempted to file something else where there's already been a ruling in his favor saying that the money belonged to him. So certainly he would have been subject to some type of race judicata, collateral estoppel, claim preclusion, or issue preclusion. Second of all, he certainly would have been subject to a contempt of the intermediate appellate court. We're not even talking about a district court at this point. We are talking about the appellate court saying take absolutely no actions whatsoever. Third, your honor, as it relates to this statement that he could have filed a collection action, it is important for the court to remember that the funds were in the possession and control of the state registry of court. The funds were not even in the possession of Maison Royale. The $775,000 remained in the possession and control of the clerk of court, a civil district court for the parish of Orleans, and those funds were not released from the possession and control from the clerk of court until the trustee in the bankruptcy proceedings actually was able to get the funds. So for all of those reasons, your honor, clearly Mr. Adams was precluded from violating an intermediate appellate court's order. Second, Maison Royale did not even have the funds in its possession. Third, he would have opened himself up to a contempt by an appellate court such that for all of those reasons, it really does not make sense to assert, oh he could have simply gone and filed to the court's question. Yet another action in addition to all of the four, six, seven actions that were already pending and that were the subject of the stay by the intermediate appellate court, your honor. So if we look at the relevant timeline related to this issue concerning whether or not the claims are prescribed, we believe that the relevant timeline makes abundantly clear as the bankruptcy court found from a factual standpoint as affirmed by Judge Fallon from an appellate standpoint that one, because this is one of the points that opposing counsel did not mention, we start with the standpoint that prescription was first interrupted before we even get to the stay. We have to start with the standpoint that prescription was interrupted when Jack Adams filed a motion in state court for the release of the on October 11, 2019. So we start the prescriptive period from June 9, 2017 when he actually loaned Maison Royale the $775,000 that was placed into the registry of the court. So prescription is running, prescription is running. However, on October 11, 2019, he files a motion for the release of the funds. Both the bankruptcy court as well as the district court found that him filing the motion and providing specific notice to Maison Royale, which was in the lawsuit derivatively through Rick Sutton, that was sufficient under Louisiana case law for purposes of interrupting prescription. Once prescription is interrupted, the clock is completely reset. So we start with a completely new date as it relates to prescription money. So then we start on October 11, January 30, 2020 is when the state court issues an order finding the registry loans to be, quote, Jack Adams money. So the registry funds are legally determined as of January 30, 2020 to be Adams money such that he couldn't even move for any further relief. He's gotten an order in his favor from the district court saying this is his money. Then we get to the state. So as the court is aware, there's a difference between interruption of prescription versus suspension of prescription. So when we get to the state on February 12, 2020, the state suspends any actions from taking place. That is abundantly clear. And it's also important, Your Honors, to look at what Louisiana law specifically states as it relates to the prescription statutes. First of all, prescription under Louisiana law is strictly construed. The courts have stated, the Louisiana Supreme Court stated in the Carter versus Haygood case, which we cite in our aptly brief, that if there are two possible interpretations for a claim to either be extinguished or for a claim to have the ability to move forward, the courts favor the claim being able to move forward. So we start from the premise that prescription is strictly construed. However, when we get to the state, we are talking about a specific court order, nothing can take place where a state bluntly is defined and speaks for itself. Everything is stated during this actual time period. So there was no action that Jack Adams could have taken related to these funds, which have already been determined to be his funds by the January 30th order, Your Honor. Are there cases where contra non voluntum is applied in situations like this? I'm not sure, but bluntly, Your Honor, I'm not really sure of any situation like this, period, with the number of lawsuits that have transpired between these parties. Well, but contra non voluntum generally is like, you don't know your cause of action, or you're unable to proceed with your claim because your injury doesn't manifest itself. I'm thinking of the taxatier cases and their other contexts. I'm just wondering, this is almost more like a civil disability or a prohibition by a court. Is there case law that supports application of that here? I'm not familiar with the case law that directly applies in this particular situation, Your Honor, but I would think that the case law related to what a judicial state order means, one would be directly applicable here if a court, particularly an appellate court, issues a state order. That, to me, should be definitive for purposes of saying for the second prong of contra non voluntum, proceedings prevent the creditor from suing. The proceedings at issue here with a court order from the appellate court saying nothing else can take place prevented Jack Adams, who had already been legally determined to be the owner of the funds, from going any further as it relates to attempting to get his funds from the registry of the court, Your Honor. So we believe that the second prong is very clear that it does apply in this particular situation. And to go even further with that, Your Honor, we do not believe that the appellate has met his burden of proof that the bankruptcy court in a detailed 27-page analysis and the district court in a detailed 19-page analysis made the wrong legal determination about contra non voluntum actually applying in this situation such that there was no action he could take to actually get the money from the registry of the court. So we believe that the timeline is pretty clear, that after the stay is issued, the prescription is suspended, not interrupted, and the stay stays into place until May 16, 2023, when it is lifted by the Louisiana Supreme Court after denying Adams application for rehearing after the Supreme Court had vacated the Fourth Circuit's judgment. So bottom line is if look at this time period from May 16, 2023 to June 20, 2023, which is the date that Adams filed for bankruptcy and the proof of claim, there is more than sufficient time to show that this claim is completely timely under these facts and circumstances, which to your point, Your Honor, these are fairly unique circumstances. But again, we believe that two lower courts, and it might be clear that the bankruptcy court reviewed all of this over the course of a two-day trial. So two lower courts have made very specific findings related to this issue of contra non voluntum suspension and definitely the interruption of prescription by virtue of the motion for release of the funds being filed. So going back to the issue, since I do have a couple of minutes left, going back to the issue related to the classification, we believe consistent with the lower court's findings, there is no doubt, debate, or issue that the classification is one of debt that the appellant has put forth nothing. Again, there's not even a reference in the brief to the the court made very, very clear what the situation is in this. When you're dealing with 502B1 of the U.S. bankruptcy court, it provides that a claim is disallowed if such claim is unenforceable against the debtor and the property of the debtor under any agreement or applicable law. Applicable law has been held by the U.S. Supreme Court in Butner v. U.S. in 1979 as well as by this court in Lothian oil. Applicable law under section 502B is state law. So as the district court stated, a claim based on a debt may therefore be disallowed under section 502B1 and instead treated as an equity interest if applicable state law provides grounds for such characterization. However, the district court specifically noted, the bankruptcy court specifically noted, and I will quote from the district court here, page nine, Sutton failed to point to a single provision of Louisiana law that would support re-characterization of the $775,000 as equity in the district court as well as the bankruptcy court specifically refer to what a capital contribution definition is under Louisiana revised statute 12, and it says that under no set of circumstances could this fall within the definition of a capital contribution. I see my time is almost up, your honors. We respectfully request that this court affirm the bankruptcy court ruling, the district court ruling on appeal, and grant Mr. Adams the $775,000 that he clearly loaned to Mason Royale. Thank you, your honors. Thank you, your honors. I'll try to reply to three issues. Real quick question first. It's been on my mind. So your position is that Adams could have pursued a collection action despite the stay. What does the relief look like in that case? The relief would be a petition on open account or a petition on loans. But I mean effectively you'd have one court ordering another court to dispense monies from its registry or another court ordering the court of appeal to do something or what? And judge, that's actually a good point, and I think there's some confusion. That's why I've written it down waiting for you to get back I'm talking about the $775,000. But so his loan though is a liquidated, that should be an easily liquidated claim, right? He files a lawsuit on the loan. The $775,000 is actually a completely different item, judge. That's the money that as counsel for FLE stated, that was his money, right? He won at the lower court. But I thought that was the money we were fighting over that basically you'd said he could have pursued collection action despite the stay. But he's not pursuing a collection action to collect the $775,000. He's filing a petition to preserve his claim against Maison Royale. The $775,000, our position is that was the residual money from the company, right? That was actually what the partners would have shared when the company shut down in 2016. When by the way, the final tax return was filed by the company by Mr. Adams and reflected that there were no loans, there were no liabilities on the final year end tax return. That goes more to the Lothian factors, your honor. And the fact that these loans, the $775,000, and you make a good point. It's a very unique sort of transaction. The bankruptcy court termed it as a forced loan, but really it all relates back to 2016 when he shut down the company. He was just returning money that he improperly absconded with when he improperly liquidated the assets of the company. He was just returning the status quo. Maison Royale now has this $775,000 res that eventually went into a bankruptcy estate. But now everybody determines what happens at the end of the day. So if you claim you have a loan, like if I loaned money to Maison Royale, I would have filed a collection action. Mr. Adams had to file a collection action. At that point, all Maison Royale has is likely the $775,000. But that money doesn't belong to anybody. That's just Maison Royale's asset. In fact, that's how Mr. Adams listed it in the bankruptcy in 2023. He listed it as Maison Royale's asset. And he put that asset into bankruptcy and everyone who has a claim against Maison Royale could file their claims and assert their rights to a portion of that asset. His problem is he's too late. He never asserted his loan claim. And he had to well before he filed the bankruptcy in 2023. And in fact, he never called it a loan. He always called it his money because he owned 100% of the company. It only became a loan when it had to be a loan to advance his litigation tactic in the bankruptcy case, Your Honor. So to round it off, though, the order includes it doesn't have any language that precludes him from filing a collection action. It also, regarding these concerns about contempt, I mean, at a minimum, you could seek relief from this stay. This order is very precise. The language is clear. There's nothing about preventing Mr. Adams from filing a collection action. If he were concerned about that, rather than sitting on his hands, he should have asked the court for a comfort order or to modify the stay. Lastly, Judge, I would like to touch on the factual findings regarding the loan, and the fact that the bankruptcy court totally disregarded the fact that the Louisiana Supreme Court had already determined that Mr. Adams, during his state court testimony, had actually altered documentation regarding the ownership of the company. And ultimately, the Supreme Court found that Mr. Adams had no credibility. Yet the bankruptcy court relied on unsubstantiated statements. Thank you, Your Honor. I appreciate it, and we ask that the lower court's decisions be vacated. Thank you, judges. Thank you. That will conclude the arguments in front of the panel that we've heard this week, and the court stands adjourned.